Eichengrun v Panasci (2024 NY Slip Op 00014)

Eichengrun v Panasci

2024 NY Slip Op 00014

Decided on January 4, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 4, 2024

CV-22-2238
[*1]William A. Eichengrun et al., Respondents,
v
Robert Panasci et al., Appellants, and Tully Rinckey, PLLC, Respondent. (And a Third-Party Action.)

Calendar Date:November 16, 2023

Before:Egan Jr., J.P., Aarons, Ceresia and Mackey, JJ.

Smith, Sovik, Kendrick & Sugnet, PC, Syracuse (Katherine H. Solomon of Mauro Lilling Naparty LLP, Woodbury, of counsel), for appellants.
Powers & Santola, LLP, Albany (Michael J. Hutter of counsel), for William A. Eichengrun and others, respondents.
Gordon Rees Scully Mansukhani, LLP, New York City (Jared M. Mogil of counsel), for Tully Rinckey, PLLC, respondent.

Aarons, J.
Appeal from an order of the Supreme Court (Vincent W. Versaci, J.), entered November 17, 2022 in Schenectady County, which, among other things, partially granted plaintiffs' cross-motion for summary judgment on the issue of liability.
Plaintiff Green Oak Stockade View Apartments, LLC, of which plaintiffs William A. Eichengrun and Justin Sterling were managing members, executed a note in favor of National Bank of Coxsackie (hereinafter NBC) that was secured by a mortgage on real property located in the City of Schenectady. Sterling also personally guaranteed Green Oak's financial obligations under the note and mortgage. In 2016, NBC commenced an action to foreclose on the property. Eichengrun retained defendants Young Sommer Ward Ritzenberg Baker & Moore LLC (hereinafter Young/Sommer) and Robert Panasci (hereinafter collectively referred to as defendants) to represent Green Oak and Sterling in that foreclosure action. No formal retainer agreement was entered into for this representation. During the pendency of the foreclosure action, Green Oak had an agreement to sell the subject property to a buyer. Before this sale could be consummated, however, NBC obtained a judgment of foreclosure and sale, which was entered on September 9, 2016, and noticed a sale for December 1, 2016.
To stay the foreclosure action and the sale noticed for December 2016 and to obtain more time to finalize the potential sale with the buyer, Eichengrun, after consulting with Panasci, retained Christian Dribusch to commence a proceeding in US Bankruptcy Court for Green Oak to declare bankruptcy. On November 23, 2016, Panasci emailed Eichengrun and Sterling a consent to change attorney to substitute Dribusch in the place of defendants as the attorney of record in the foreclosure action. The consent to change attorney was executed only by Panasci and was never filed with the court in the foreclosure action. On or about November 30, 2016, Dribusch filed a petition in Bankruptcy Court, thereby staying the foreclosure action. In February 2017, Eichengrun, on behalf of Green Oak, retained defendant Tully Rinckey, PLLC to replace Dribusch as the attorney of record in the bankruptcy proceeding. The retainer agreement limited Tully Rinckey's representation to preparing a bankruptcy petition and related schedules and did not include any service for appeals, postjudgment work or matters other than the bankruptcy proceeding. Tully Rinckey then filed a reorganization plan, which maintained a stay of the foreclosure action. Bankruptcy Court, however, ultimately rejected it. NBC then moved to lift the stay and, on May 18, 2017, Bankruptcy Court granted NBC's motion. On June 1, 2017, NBC served a notice of sale on Young/Sommer indicating that the subject property would be sold on June 22, 2017. Panasci reviewed the notice and placed it in his file, but he did not notify anyone of it.
Shortly after the lifting of the stay, an attorney with Tully Rinckey advised Eichengrun that, other than filing [*2]a notice of appeal with respect to the May 2017 order to preserve appellate rights, Tully Rinckey would not perfect the appeal or perform any other appellate work absent another retainer agreement. Tully Rinckey did file a notice of appeal, and Eichengrun contemplated a further engagement with Tully Rinckey for appellate work. In the meantime, Eichengrun also asked an attorney at Tully Rinckey if there had been a notice of sale and if Tully Rinckey could inquire about it. A second retainer agreement between Green Oak and Tully Rinckey for appellate work in the bankruptcy proceeding was eventually entered into on June 26, 2017. The subject property, however, had already been sold on June 22, 2017. NBC ultimately sought confirmation of the sale and, in November 2017, a deficiency judgment was entered against Sterling. Green Oak thereafter moved to vacate the sale of the subject property, but the motion was denied.
Plaintiffs commenced this action against defendants. Defendants thereafter commenced a third-party action against Tully Rinckey, after which plaintiffs amended their complaint to add Tully Rinckey as a direct defendant. In the amended complaint, plaintiffs alleged claims of legal malpractice, breach of contract and breach of a fiduciary duty. Defendants joined issue and asserted cross-claims for contribution and common-law indemnification against Tully Rinckey. Tully Rinckey answered the third-party complaint and the amended complaint. Following discovery, defendants moved for summary judgment dismissing the amended complaint. Tully Rinckey separately moved for summary judgment dismissing the amended complaint, all cross-claims asserted against it and the third-party complaint. Plaintiffs cross-moved for, among other things, partial summary judgment on the issue of liability. Supreme Court, as relevant here, granted Tully Rinckey's motion in its entirety, granted defendants' motion to the extent of dismissing the claims for breach of contract and breach of a fiduciary duty and granted plaintiffs' cross-motion to the extent of finding defendants negligent. The court also dismissed all claims asserted by Eichengrun in his individual capacity. This appeal by defendants ensued.[FN1]
A legal malpractice claim requires, among other things, the existence of an attorney-client relationship between the client and the attorney (see Maddux v Schur, 16 AD3d 873, 874 [3d Dept 2005]; Tabner v Drake, 9 AD3d 606, 609 [3d Dept 2004]). Defendants argue that they did not have an attorney-client relationship with plaintiffs at the time that the June 2017 notice of sale was served and, therefore, cannot be liable for failing to advise plaintiffs about such notice. In that regard, defendants argue that their attorney-client relationship with plaintiffs terminated when the judgment of foreclosure and sale was entered and when bankruptcy proceedings on plaintiffs' behalf were commenced. We disagree. First, the consent to change attorney did not comply with the requirements [*3]of CPLR 321 (b) (1) given that only Panasci executed it and the consent was never filed with the appropriate court clerk. In view of this failure, and in the absence of a court order discharging defendants as the attorneys of record in the foreclosure action, defendants continued to represent plaintiffs in that action and their authority as the attorneys of record continued unabated (see GMAC Mtge., LLC v Galvin, 184 AD3d 750, 750-751 [2d Dept 2020]; Hess v Tyszko, 46 AD2d 980, 980 [3d Dept 1974]). Second, the record reflects that, following the entry of the judgment of foreclosure and sale, the December 2016 notice of sale was served upon Panasci, and Panasci advised Eichengrun about options to pursue with regard to that judgment and notice. The June 2017 notice of sale was also served upon Young/Sommer and, in his deposition testimony, Panasci confirmed that, at that time, he was the attorney of record for Green Oak and Sterling. Additionally, Young/Sommer billed Eichengrun for work in connection with NBC's motion for a deficiency judgment, and Panasci submitted a letter to the court in the foreclosure action regarding that motion. Third, under the circumstances of this case, the commencement of a bankruptcy proceeding and the listing of Young/Sommer as a creditor in the bankruptcy petition did not terminate the attorney-client relationship as a matter of law. Accordingly, defendants failed to show that their attorney-client relationship with plaintiffs was severed following the entry of the judgment of foreclosure and sale and the commencement of the bankruptcy proceeding.
As to the merits of the legal malpractice claim, defendants do not contest Supreme Court's finding that their failure to notify Eichengrun about the June 2017 notice of sale constituted negligence. Rather, they contend that plaintiffs cannot establish that such negligence was a proximate cause of the alleged damages. "To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence" (Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438, 442 [2007] [citations omitted]; see Nomura Asset Capital Corp. v Cadwalader, Wickersham & Taft LLP, 26 NY3d 40, 49-50 [2015]). That said, defendants' argument centers on the notion that plaintiffs had to prove that they could have obtained a stay pending an appeal of the May 2017 order in the bankruptcy proceeding and that they would have been successful on such appeal. This argument, however, focuses on Tully Rinckey's actions. Although defendants point to Tully Rinckey's purported failures in the bankruptcy proceeding, even assuming that Tully Rinckey bore some liability due to those failures, such fact does not necessarily preclude a finding that defendants' negligence was a proximate cause of plaintiffs' claimed damages. In this regard, there can be more than one proximate cause of an alleged injury (see Grant v Nembhard[*4], 94 AD3d 1397, 1399 [3d Dept 2012]). Defendants seemingly attempt to deflect the blame to Tully Rinckey, but they cannot completely absolve themselves from liability when they do not explain how the failure to notify Eichengrun of the June 2017 notice of sale did not proximately cause plaintiffs' alleged injuries or how Tully Rinckey's actions were the sole proximate cause of those injuries.
To that end, contrary to defendants' assertion, Supreme Court correctly dismissed defendants' cross-claims asserted against Tully Rinckey. "An attorney may not be held liable for failing to act outside the scope of the retainer" (Kohler v Polsky, 219 AD3d 821, 822 [2d Dept 2023] [internal quotation marks and citation omitted]; see generally AmBase Corp. v Davis Polk & Wardwell, 8 NY3d 428, 435 [2007]). Green Oak's first retainer agreement with Tully Rinckey explicitly limited the legal services to be provided by Tully Rinckey to the bankruptcy proceeding at the trial level. It also specifically excluded legal services for appeals and work in any other action or proceeding. Given the exclusion for appellate work in the bankruptcy proceeding, once the stay was lifted by Bankruptcy Court, Tully Rinckey cannot be held liable for any alleged failure to obtain a stay pending a potential appeal. Indeed, Eichengrun testified at his deposition that he did not believe that Tully Rinckey's representation of Green Oak included an obligation to get the stay reinstated once it was lifted. Furthermore, although Eichengrun, following the May 2017 bankruptcy order, inquired with Tully Rinckey about whether a sale of the subject property had been noticed, Tully Rinckey had no duty to look into the issue because it was not encompassed within the scope of services as provided in the first retainer agreement. In view of the limitations imposed in that retainer agreement, Tully Rinckey cannot be held liable for any failures that were outside its scope (see Keld v Giddins Claman, LLP, 170 AD3d 589, 589 [1st Dept 2019]; 180 E. 88th St. Apt. Corp. v Law Off. of Robert Jay Gumenick, P.C., 84 AD3d 582, 583 [1st Dept 2011]).
Regarding plaintiffs' damages, one element of a legal malpractice claim is that the client must have "suffered actual and ascertainable damages" (Brodeur v Hayes, 18 AD3d 979, 980 [3d Dept 2005] [internal quotation marks and citations omitted], lv dismissed & denied 5 NY3d 871 [2005]). As part of the claim for damages, plaintiffs alleged the loss of the subject property. As Supreme Court found, had defendants timely notified Eichengrun about the June 2017 notice of sale, plaintiffs had the financial means to bid on the subject property at such sale or to take urgent action to obtain a stay of that sale. Also taking into account the evidence about the market value of the subject property, plaintiffs' damages are not speculative (see Island Props. & Equities, LLC v Cox, 93 AD3d 639, 640 [2d Dept 2012]; Deitz v Kelleher & Flink, 232 AD2d 943, 946 [3d Dept 1996]; compare [*5]Lincoln Trust v Spaziano, 118 AD3d 1399, 1401-1402 [4th Dept 2014]). Accordingly, defendants' assertion that damages should be limited to the amount of the deficiency judgment entered against Sterling is without merit. Defendants' remaining contentions have been considered and are unavailing.
Egan Jr., J.P., Ceresia and Mackey, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.

Footnotes

Footnote 1: Plaintiffs had filed a notice of appeal but subsequently withdrew it.